UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRICIA WHITE,                    )
                                   )
                                   )          No. C 10-1855 BZ
          Plaintiff(s),            )
                                   )
     v.                            )
                                   )
COBLENTZ, PATCH AND BASS LLP)          **FINDINGS AND CONCLUSIONS**
LONG TERM DISABILITY               )
INSURANCE PLAN, et al.,            )
                                   )
                                   )
          Defendant(s).            )
                                   )
_____)

     While working as a legal secretary at Coblentz, Patch,

Duffy & Bass LLP, plaintiff Patricia White participated in an

ERISA welfare benefit plan (the "Plan") sponsored by Coblentz

and insured by Prudential Insurance Company of America.[1]  In

this action, plaintiff claims that Prudential's denial of her

long-term disability benefits was unlawful because she was

///

---

[1]      This Ruling constitutes the findings of fact and
conclusions of law required by FRCP 52.

1

1  disabled under the "any occupation" standard of the Plan.[2]

2  **I.    BACKGROUND**

3      Plaintiff's medical problems began in November 1999 when

4  she stopped working at Coblentz due to pain in her hands,

5  wrists, forearms, and elbows.  Several months later,

6  plaintiff returned to work on a part-time schedule, but her

7  pain reemerged and she stopped working permanently.

8  Plaintiff filed a claim for long-term disability benefits

9  under the "own occupation" standard of the Plan.  Prudential

10 approved plaintiff's claim and she received benefits from

11 March 2000 through April 2004.  Prudential then terminated

12 plaintiff's benefits as of May 2004 based on a medical

13 evaluation it conducted.  Plaintiff appealed this decision,

14 but Prudential upheld its determination that she was no

15 longer disabled.

16     In 2005, plaintiff filed a lawsuit in this court

17 claiming that Prudential's termination of her benefits was

18 improper.  The Honorable Martin J. Jenkins first ruled that

19 the appropriate standard of review was de novo review.  After

20 denying both parties' cross motions for summary judgment,

21 Judge Jenkins conducted a short bench trial in March 2007.

22 He analyzed plaintiff's medical history and the conflicting

23 medical opinions regarding her condition, and concluded that

24 plaintiff "has demonstrated that she is disabled under the

25 terms of the Plan as to her 'own occupation' of legal

26

27      [2]   All parties have consented to my jurisdiction for all
    proceedings including entry of final judgment, pursuant to 28
28 U.S.C. § 636(c).

1    secretary and is entitled to LTD benefits from May 1, 2004

2    through [March 2005]."  Administrative Record (AR) 508.

3    Judge Jenkins did not reach the issue of whether plaintiff

4    was disabled under the terms of the Plan as to "any

5    occupation" which would allow her to receive benefits beyond

6    March 2005.

7         After Judge Jenkins' decision, plaintiff filed a claim

8    with Prudential to continue her benefits under the "any

9    occupation" standard.  Prudential denied this claim in May

10   2008 and also denied plaintiff's subsequent appeals.  In

11   April 2010, plaintiff filed this lawsuit alleging that

12   Prudential's decision to deny her benefits under the "any

13   occupation" standard was unlawful under ERISA.

14   **II.   ANALYSIS**

15        A challenge to the denial of benefits under an ERISA

16   plan is reviewed de novo "unless the benefit plan gives the

17   administrator or fiduciary discretionary authority to

18   determine eligibility for benefits or to construe the terms

19   of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S.

20   101, 115 (1989).  Here, both parties agree that de novo

21   review applies.  Under this standard, the court "does not

22   give deference to the claim administrator's decision, but

23   rather determines in the first instance if the claimant has

24   adequately established that he or she is disabled under the

25   terms of the plan."  Muniz v. Amec Const. Mgmt., Inc., 623

26   F.3d 1290, 1295-96 (9th Cir. 2010).  Generally, the court's

27   review is limited to the evidence contained in the

28   administrative record and extrinsic evidence can only be

3

1 considered under certain limited circumstances.  <u>Opeta v.</u>

2 <u>Northwest Airlines Pension Plan for Contract Employees</u>, 484

3 F.3d 1211, 1217 (9th Cir. 2007).

4         Accordingly, to prevail in this action, plaintiff must

5 establish that she was disabled under the "any occupation"

6 standard of the Plan.  The Plan provides that a claimant is

7 disabled when due to sickness or accidental injury she is (1)

8 not able to perform for wage or profit the material and

9 substantial duties of any job for which she is reasonably

10 fitted by her education, training or experience; (2) not

11 working at any job for wage or profit; and (3) under the

12 regular care of a doctor.  AR 1203.  While the Court reviews

13 the entire administrative record in determining whether

14 plaintiff was disabled, the parties agree that the relevant

15 time period on which the Court should focus, is from March 3,

16 2005 (when plaintiff became eligible for benefits under the

17 "any occupation" standard) to May 22, 2008 (when Prudential

18 first denied plaintiff's claim for benefits under that

19 standard).  <u>See</u> Docket No. 83 at 10-13.

20         A threshold issue is the extent to which Judge Jenkins'

21 previous findings and conclusions apply to this lawsuit.

22 Prudential is correct that I cannot automatically rule that

23 plaintiff is disabled based on Judge Jenkins' earlier

24 decision because the current dispute is for a different time

25 period and requires a determination under the "any

26 occupation" standard rather than the "own occupation"

27 standard.  But this does not mean that Judge Jenkins'

28 decision is immaterial.  Judge Jenkins ruled after thoroughly

4

1  reviewing plaintiff's medical condition and functional

2  capacity from 1999 to 2005 and neither party appealed from

3  his ruling.  Because many of the issues present here have

4  already been litigated by the parties, there is no reason for

5  me to revisit those issues.  Rather, Judge Jenkins' findings

6  and conclusions as they relate to the "own occupation"

7  standard, become the starting point for my analysis.  Thus,

8  as of March 2005, it is established that plaintiff had a

9  repetitive stress injury in her upper extremities that

10  limited her functional capacity and prevented her from

11  working as a legal secretary.  The questions now before the

12  Court are whether after March 2005 plaintiff's medical

13  condition changed and whether she could work in any

14  occupation with her condition.

15      In support of her claim, plaintiff submitted medical

16  documentation to Prudential that she argues shows that her

17  functional capacity remained limited after 2005 and prevented

18  her from working in any occupation.  One medical report is

19  from Dr. Dickie Hill, a licensed osteopathic physician and

20  surgeon, whom plaintiff consulted on several occasions in

21  December 2009 and January 2010.  After examining plaintiff

22  and reviewing her medical records, Dr. Hill explained that

23  plaintiff's soft tissue pain has remained chronic and

24  "exceed[s] the ability of her body to recover" from such

25  pain.  AR 381.  Dr. Hill concluded that because plaintiff's

26  soft

27  ///

28  ///

5

1    tissue problems could flare up and cause excruciating pain

2    with just the limited use of her upper extremities, she was

3    disabled from working in any occupation.   <u>Id.</u>[3]

4         Additionally, plaintiff consulted with Dr. Mohinder

5    Nijjar in December 2009.  Dr. Nijjar, a board certified

6    orthopedic surgeon, reviewed plaintiff's medical history and

7    physically examined her.  While Dr. Nijjar was definitive

8    about plaintiff's condition having not changed since 2005,

9    his other conclusions are ambiguous.  It is not clear whether

10   his medical opinion is that plaintiff is unable to work only

11   in her "own occupation" or in "any occupation."  <u>See</u> AR 400-

12   401.  At one point in Dr. Nijjar's report, he agrees with

13   earlier opinions that plaintiff is unable to work as a

14   secretary and lists reasons why she cannot work in this

15   capacity.  <u>Id.</u>  But in his list of reasons, Dr. Nijjar writes

16   that (1) plaintiff experiences moderate pain after 30 to 45

17   minutes of sitting, walking, or standing; (2) "there is no

18

19        [3]     Prudential objects to the admission of Dr. Hill's
     report, arguing that his medical practice focuses mainly on
20   cosmetic procedures and there "is no evidence that he has any
     particular background or experience treating repetitive stress
21   disorders, fibromyalgia, or arthritis."  Docket No. 39 at 10.
     In the Ninth Circuit, evidence outside of the administrative
22   record may be considered in limited circumstances, such as when
     issues arise about the credibility of medical experts.  <u>See</u>
23   <u>Opeta</u>, 484 F.3d at 1217.  Because Prudential has raised such an
     issue, the Court finds that it is necessary to consider Dr.
24   Hill's supplemental declaration which explains his medical
     background.  In this declaration, Dr. Hill testifies that he is
25   the primary care physician for almost 1200 active patients and
     he spends less than 1 percent of his time performing cosmetic
26   procedures.  Docket No. 43 at ¶ 12.  Further, he testifies that
     he has treated hundreds of patients with repetitive stress
27   disorders and fibromyalgia.  <u>Id.</u>  Based on this testimony,
     Prudential's objections with respect to Dr. Hill's report are
28   **OVERRULED**.

1   job provided" where she would only be required to work for 30

2   to 45 minutes at a time; and (3) plaintiff "needs to use both

3   upper extremities for most of the work required, and without

4   that consideration, I think the patient is unable to be fully

5   employed with the condition of her neck and upper

6   extremities."  Id.

7       Plaintiff also relies on Dr. Alan Zacharia's June 2006

8   declaration.  Of the various medical reports in the record, I

9   found his the most helpful.  Dr. Zacharia was the jointly

10  appointed orthopedic evaluator who examined plaintiff in 2001

11  for her worker's compensation claim.  In 2001, he concluded

12  that plaintiff was a medically qualified injured worker due

13  to the repetitive stress injury in her upper extremities and

14  recommended that she rest until her injury became

15  asymptomatic.  AR 709-10.  Dr. Zacharia noted that it is rare

16  for such stress injuries to "persist longer than three to

17  five years because people, over an extended period of time,

18  develop protective self-modification protocols and learn to

19  avoid the kinds of activities that exacerbate the condition."

20  AR 710.  Dr. Zacharia's 2006 declaration further clarified

21  his medical opinion, explaining that while most patients

22  adapt to their condition and are able to return to work,

23  "there are a significant number who cannot return to work"

24  and plaintiff's ability to work will depend on the frequency

25  and intensity of her flare-ups and whether or not there are

26  limitations.  Docket  No. 28-3 at ¶ 15.[4]  Dr. Zacharia's

27

28      [4]   Prudential objects to Dr. Zacharia's 2006 declaration
    because it is not in the administrative record and his 2001
    report, when he actually examined plaintiff, is more reliable.

1    declaration also reiterated his clinical findings which

2    showed through x-rays that plaintiff had problems associated

3    with degenerative changes in her cervical anatomy and with

4    arthritic bone spurs on her cervical vertebrae (called

5    "foraminal impingement").  He noted that these problems are

6    likely to worsen with age, and that when combined with

7    repetitive motions, such as during work, they cause pain in

8    her extremities.  Id. at ¶¶ 4-7.

9         Plaintiff's medical documentation included medical notes

10   from her doctor visits in Italy (where she moved in 2005) and

11   her 2010 letter to Prudential outlining her medical condition

12   and functional capacity.  Plaintiff's records from Italy show

13   that she did not receive consistent treatment from doctors

14   with respect to her arm pain, but she did consult Italian

15   medical professionals occasionally in 2006 and 2007 and

16   sometimes complained about pain in her upper extremities

17   during these consultations.  See AR 511-539.  In her letter

18   to Prudential, Plaintiff explains that her activity level

19   remains minimal due to the constant pain she is experiencing.

20   AR 388.  Her biggest concern is that even the slightest

21   activity, especially with her arms, may cause a flare-up that

22   would once again result in excruciating pain and swelling

23   which may take weeks or months to recover from.  Id.

24

25

26   This objection is **OVERRULED**.  Regardless of whether it was
     plaintiff's or Prudential's fault for the declaration not being
27   included in the administrative record, Prudential was aware of
     about the declaration and Dr. Zacharia's explanatory testimony
28   because the declaration was filed (though not considered) in
     the earlier action before Judge Jenkins.

1    Plaintiff contends that it is this pain and these concerns

2    that prevent her from working in any job.  Id.

3          Having reviewed the record, I find that plaintiff has

4    shown that her medical condition has not improved since 2005

5    as she still suffers from a repetitive stress injury to her

6    upper extremities.  Although plaintiff is at times able to

7    use her arms, this limited activity may later result in

8    flare-ups that cause her debilitating pain, such as the time

9    in 2000 when her return to work resulted in six months of

10   intensive treatment.  The record also contains evidence that

11   her condition prevents her from working in any occupation.

12         Prudential's arguments against plaintiff's showing are

13   not persuasive.  It first relies on the medical reports of

14   two doctors it hired to review plaintiff's file.  Both

15   reports fail to provide a comprehensive review of plaintiff's

16   medical condition because they do not address the issues and

17   concerns raised by plaintiff's doctors.  Though this was one

18   of the reasons Judge Jenkins ruled in favor of plaintiff in

19   the earlier action, Prudential continues to employ the same

20   practice.  See e.g., AR 507 at ¶ 73.  ("Dr. Stevens

21   [Prudential's medical reviewer] never acknowledges or

22   reconciles several key pieces of evidence with his opinion

23   that Plaintiff can perform certain activities.  Specifically,

24   Dr. Stevens never acknowledges Plaintiff's attempt to return

25   to work for twenty hours per week and the resulting flare-up

26   and six months of intensive treatment...").

27         After Prudential received Dr. Hill's and Dr. Nijjar's

28   reports, it hired Dr. Ephraim Brenman to conduct a medical

9

1   review of plaintiff's file.  Rather than addressing

2   plaintiff's doctors' concerns about her medical condition,

3   Dr. Brenman simply concluded that plaintiff's claim was

4   baseless because it consisted of mainly self-reported

5   complaints without any clinical findings to support them.  AR

6   376-77.  Dr. Brenman found that the "claimant has no

7   restrictions or limitations in terms of the ability to sit,

8   stand, walk, reach, lift, carry, and perform repetitive upper

9   extremity activities".  AR 377.  Dr. Brenman did not attempt

10  to explain why Dr. Hill or Dr. Nijjar's conflicting

11  conclusions, that plaintiff could not perform these

12  activities, were wrong.  Even more troubling, Dr. Brenman did

13  not acknowledge that Judge Jenkins specifically ruled that

14  plaintiff had a limited functional capacity in 2005.  Judge

15  Jenkins' decision was based on previous functional capacity

16  examinations that found plaintiff did have physical

17  restrictions, such as her being unable to type for longer

18  than ten minutes.  AR 507; see also AR 878-89 (after

19  conducting a physical examination, Dr. Chu concluded that

20  plaintiff suffers from repetitive stress injury and may have

21  difficulty reaching in all directions and with gross and fine

22  manipulation).  Nor did Dr. Brenman acknowledge that previous

23  examiners had noted that plaintiff's extremities were swollen

24  which is objective evidence that she did have some form of

25  stress injury.  See, e.g., AR 712 (Dr. William Billings,

26  plaintiff's former treating physician, remarked that on

27  February 28, 2005 he observed plaintiff "with very

28  significant pain, swelling, and warmth of the upper one half

10

1  of both forearms"); AR 565 (Dr. Billings reported in May 2004

2  that he has treated plaintiff actively since 2000 for

3  bilateral upper extremity pain, swelling, muscle firmness,

4  and dysfunction); Zacharia Declaration at Docket No. 28-3.   I

5  attach little weight to Dr. Brenman's report, since it

6  ignores these findings and conclusions.

7      The same is true for Dr. Trenton Gause's 2008 medical

8  review of plaintiff's file.  Dr. Gause concluded that while

9  plaintiff has a mild impairment that is not likely to

10  improve, she "can use her hands for reaching, grasping,

11  gripping, holding, punching, and seizing in an unrestricted

12  fashion."  AR 472-73.  Dr. Gause made no attempt to explain

13  why other doctors determined that plaintiff had a limited

14  functional capacity and never addressed Judge Jenkins holding

15  that she could not work as a legal secretary because she

16  could not perform these very activities (i.e. reaching,

17  grasping, gripping, etc.).[5]

18      Prudential also fails to support its position that

19  "clinical findings" such as "functional examination findings"

20  are necessary for plaintiff to prevail on her claim.  See AR

21  377.  Prudential does not point to any language in the Plan,

22  which governs the agreement between plaintiff and Prudential,

23  that requires such "clinical findings."  Courts in this

24  District have previously held that insurer defendants in

25  _____

26  [5]    Dr. Brenman only charged Prudential $1,023.75 for his
entire review of plaintiff's medical file and a number of
litigation records.  AR 363.  Dr. Gause's review only cost
27  Prudential $1,155.00.  AR 463.  Considering that plaintiff's
file consisted of about 10 years' worth of documents, these low
28  charges suggest that the reviews may have been less than
thorough.

1    ERISA actions cannot deny claims based on standards that are

2    not contained in the policy.  See e.g., Duncan v. Continental

3    Casualty Co., 1997 WL 88374 at *4 (N.D. Cal. 1997)(holding

4    that the defendant insurer could not exclude plaintiff's

5    ERISA claim for lack of objective medical evidence unless

6    that standard was clearly articulated in the policy).

7    Moreover, as highlighted earlier, there were clinical

8    findings in 2004 and 2005 and there is no indication that

9    plaintiff's condition has drastically changed to the point

10   that such findings are now irrelevant.

11        Prudential criticizes plaintiff's medical evidence,

12   claiming that the only clinical findings are the swellings

13   observed by several doctors.  Prudential does not deny these

14   findings and does not explain why it did not conduct its own

15   physical examination of plaintiff.  Under the Plan,

16   Prudential has specifically reserved the right to physically

17   examine plaintiff "as often as is reasonable."  AR 1214.

18   Notably, when evaluating plaintiff's "own occupation" claim,

19   Prudential required plaintiff to submit to physical

20   examinations, including a functional capacity examination.

21   If Prudential believed that plaintiff's subjective complaints

22   after March 2005 were false, it could have again required her

23   to submit to such procedures.  Instead, Prudential chose to

24   overlook plaintiff's complaints and her doctor's observations

25   and now argues that plaintiff's claims are not supported by

26   "functional findings."

27        The reality in this case is that plaintiff's medical

28   condition is interrelated to her subjective complaints of

12

1  pain, which is not grounds for rejecting her claim.   In

2  Saffon v. Wells Fargo & Company Long Term Disability Plan,

3  the Ninth Circuit discussed the relevance of subjective pain

4  by referring to its previous opinions on the topic in Social

5  Security disability cases.   522 F.3d 863, 872-73 (9th Cir.

6  2008)(noting that "individual reactions to pain are

7  subjective and not easily determined by reference to

8  objective measurements"); see also Patrick v. Hewlett-Packard

9  Co. Emp. Benefits Org. Income Protection Plan, 638 F.Supp.2d

10  1195, 1215 (S.D. Cal. 2009)(ERISA insurer's approach of

11  "disregarding subjective evidence of pain is disapproved in

12  Ninth Circuit precedent")(internal citations and quotations

13  omitted).   In the Social Security context, the claimant's

14  "pain need not be corroborated by objective medical findings,

15  but some impairment must be medically ascertained."   See

16  e.g., Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir.

17  1991).   That is the case here.   Plaintiff has had multiple

18  doctors, such as Dr. Zacharia, Dr. Billings, Dr. Chu, Dr.

19  Nijjar, and Dr. Hill, explain to Prudential that she suffers

20  from a repetitive stress injury to her upper extremities.

21  Thus, an "impairment [has been] medically ascertained" by

22  medical professionals and the concern that plaintiff does not

23  suffer from any medical problem is negated.   There is no

24  further requirement that plaintiff's subjective pain be

25  corroborated by objective evidence.

26      Prudential's other arguments similarly miss the mark.

27  While Prudential is correct that the Plan requires plaintiff

28  to be under the regular care of a doctor, this does not lead

1    to the denial of plaintiff's benefits.  Plaintiff followed

2    Dr. Zacharia's medical advice that the most important part of

3    her treatment was to rest until her symptoms went away.  In

4    any event, plaintiff still consulted with doctors

5    periodically between 2005 and 2008, even while she was in

6    Italy.

7        To counter plaintiff's assertion that she cannot work in

8    any occupation, Prudential points to the vocational

9    assessment performed by its vocational rehabilitation

10   specialist in May 2008.  Prudential's specialist concluded

11   that plaintiff may work in various sedentary positions, such

12   as the occupation of legal secretary.  AR 1038-39.  But this

13   assessment is not persuasive as it is based on Dr. Gause's

14   conclusion that plaintiff does not have any physical

15   restrictions besides not being able to carry more than 20

16   pounds.  AR 1038.  The assessment also does not address Judge

17   Jenkins' earlier ruling that plaintiff could not work as a

18   legal secretary.[6]

19       Based on this record, I find that plaintiff's medical

20   condition did not materially change after Judge Jenkins'

21   ruling.  Plaintiff's repetitive stress injury causes her

22   severe pain in her extremities, and, of equal importance, she

23

24       [6]    The only other vocational assessment conducted after
     March 2005 was performed by the Social Security Administration
25   (SSA) in May 2005.  While the plaintiff urges the Court to
     adopt the SSA's finding of disability, the Court may only use
26   it as evidence in a de novo review.  The SSA decision is based
     on a different disability standard and concentrated on
27   plaintiff's degenerative disc disease and not her repetitive
     stress injury.  The Court, however, takes into account the
28   SSA's conclusion that plaintiff could not meet the demands of
     basic work related activities on a sustained basis.  AR 769.

1   faces the significant danger that limited activity may cause

2   her symptoms to flare-up and force her to deal with even more

3   debilitating pain.  Due to this medical condition, I find

4   that she could not work in any occupation for which she was

5   reasonably fitted by her education, training or experience

6   and conclude that plaintiff's termination decision was

7   unlawful.

8        The last issue concerns plaintiff's separate claim for

9   prejudgment interest at a rate of ten percent pursuant to

10  California Insurance Code § 10111.2.  Defendant argues that

11  plaintiff's Section 10111.2 claim is preempted by ERISA,

12  while plaintiff counters that it falls under the ERISA

13  savings clause, 29 U.S.C. § 1144(b)(2)(A).  Plaintiff,

14  however, concedes that this District has previously addressed

15  this issue and ruled that Section 10111.2 is preempted by

16  ERISA.  See, e.g., Turnispeed v. Educ. Mgmt. LLC's Emp.

17  Disability Plan, 2010 WL 140384 at *4 (N.D. Cal. 2010)("In

18  sum, allowing plaintiff to proceed with a state law claim

19  under Section 10111.2 would effectively impose a mandatory

20  prejudgment interest rate of 10% on successful ERISA claims,

21  expanding the scope of ERISA damages and supplementing the

22  ERISA enforcement remedy.  Therefore, the claim is preempted

23  by [ERISA]"); Minton v. Deloitte & Touche USA LLP Plan, 631

24  F.Supp.2d 1213, 1220 (N.D. Cal. 2009).  I agree with these

25  decisions and it is immaterial that plaintiff's Section

26  10111.2 claim was separately pled.  Thus, plaintiff's Section

27  10111.2 claim is preempted by ERISA.

28  ///

15

1   **III. <u>CONCLUSION</u>**

2       For the foregoing reasons, I conclude that plaintiff is

3   disabled under the terms of the Plan as to "any occupation."[7]

4   As requested by plaintiff, the parties are **ORDERED** to meet

5   and confer about the remaining issues in this matter, such as

6   the amount of benefits owed and the appropriate rate of

7   interest to be applied under ERISA.  The parties shall file a

8   joint proposal for a judgment consistent with this Order by

9   **July 20, 2011**.  If the parties are unable to reach a complete

10  agreement after meeting and conferring, they may file

11  separate proposals regarding the issues still in dispute.

12  Dated: June 24, 2011

13  _____
                   Bernard Zimmerman
14                 United States Magistrate Judge

15
    G:\BZALL\-BZCASES\WHITE V. COBLENTZ PATCH et al\FINAL ORDER.wpd
16

17

18

19

20

21

22

23

24  ────────────────────

25       [7]     As explained earlier, defendant's objections to Dr.
    Hill's declaration and Dr. Zacharia's declaration are
26  **OVERRULED**.  To the extent that either party objects to other
    submitted evidence that was not contained within the
    administrative record, those objections are **GRANTED**.  The Court
27  finds that such unnecessary evidence does not fall within the
    limited circumstances outlined by the Ninth Circuit in which
28  evidence outside the administrative record may be considered in
    a de novo review.  <u>See</u> <u>Opeta</u>, 484 F.3d at 1217.

                                16